**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DUSTIN EDWIN BARKER**, *et al.*,

      **Plaintiffs,**

    **v.**                                 **Case No.  2:21-cv-4987**
                                               **Judge Sarah D. Morrison**

**MUSKINGUM COUNTY JAIL**, *et al.*,       **Magistrate Elizabeth P. Deavers**

      **Defendants.**

## ORDER AND INITIAL SCREEN REPORT AND RECOMMENDATION

Plaintiffs Dustin Barker and Michael Morrow, pretrial detainees at the Muskingum County Jail, bring this prisoner civil rights action under 42 U.S.C. § 1983.  (ECF Nos. 1-1, 8.) By separate orders, both Barker and Morrow were granted leave to proceed *in forma pauperis*. (ECF Nos. 4 and 14.)  This matter is before the Undersigned for an initial screen of Plaintiffs' Complaint as required by 28 U.S.C. § 1915A to identify cognizable claims and to recommend dismissal of Plaintiffs' Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).  Also before the Court are three motions for appointment of counsel.  (ECF Nos. 2, 3, and 6.)

Having performed the initial screen, for the reasons that follow, the Undersigned **RECOMMENDS** that Plaintiffs be **PERMITTED** to pursue their claims arising from Defendant Muskingum County's alleged "strip naked policy" (as discussed herein), but that the remainder of Plaintiffs' claims be **DISMISSED**.  It is further **ORDERED** that the motions for appointment of counsel be **DENIED WITHOUT PREJUDICE TO RENEWAL**.

## I. PROCEDURAL HISTORY

The named Plaintiffs in this action are Dustin Barker and Michael Morrow, and the operative Complaint consists of the Amended Complaint (ECF No. 8) as well as the initial Complaint (ECF No. 1-1). The Undersigned explains below.

### A. *Parties*

This action commenced on October 7, 2021 with the filing of, among other pleadings, an initial Complaint. (ECF No. 1-1.) The only named Plaintiff was Dustin Edwin Barker. (*Id.*) Named as Defendants were Muskingum County Jail, Muskingum County Sheriff's Office, Muskingum County, Zanesville Municipal Corporation, and State of Ohio. (*Id.*) It was with the filing of an amended complaint on October 28, 2021 that the following individuals were named as Plaintiffs: DeAngelo DeWon Tellis, Jamie Lee Mayle, Joseph Moore, Michael Robert Carsey, Channing Goins, and Michael Morrow. (ECF No. 8 at PAGEID # 53.) On December 2, 2021, the Court issued an Order advising Plaintiffs that the Amended Complaint, ECF No. 8, was the operative Complaint under consideration. (ECF No. 13.)

On November 4, 2021, the Court issued an Order noting that only Plaintiff Dustin Barker had sought and been granted leave to proceed *in forma pauperis*, and directing the remaining named plaintiffs, within thirty (30) days, to submit the requisite fees or application to proceed *in forma pauperis*, or risk being assessed the full requisite fees <u>and</u> dismissal for failure to prosecute (ECF No. 9.) Only Plaintiff Michael Morrow complied, filing an application to proceed *in forma pauperis* on November 19, 2021 (ECF No. 11), which the Court granted on December 16, 2021 (ECF No. 14 at PAGEID ## 93-94). And so on December 16, 2021, the Court recommended that the other named Plaintiffs be dismissed for failure to prosecute, stemming from their failure to pay the requisite fees or application to proceed *in forma pauperis*.

2

(ECF No. 14 at PAGEID # 95.)  The Court adopted that recommendation on January 6, 2022.  (ECF No. 19.)  The remaining Plaintiffs are thus Dustin Barker and Michael Morrow, while the remaining Defendants are Muskingum County Jail, Muskingum County Sheriff's Office, Muskingum County, Zanesville Municipal Corporation, and State of Ohio.

**B.**     ***Complaints***

As the Court noted on December 2, 2021, the Amended Complaint, ECF No. 8, is the operative Complaint in this action.  (ECF No. 13.)  The Court will, however, out of an abundance of caution and in fairness, also consider any allegations and claims that were raised in the initial Complaint (*see* ECF No. 1-1) but omitted from the Amended Complaint.  It is clear from the language that the Court's December 2, 2021 Order recognizing the Amended Complaint as the operative complaint was intended to stem the filing of further complaints while the Court awaited the payment of fees or filing of *in forma pauperis* applications.  Further, nothing in the Amended Complaint expressed or suggested an intent to abandon anything raised in the initial complaint but omitted from the Amended Complaint.  Thus, the Court collectively recognizes both pleadings as the operative complaint that will be subjected to an initial screen pursuant to 28 U.S.C. § 1915A.[1]  The Court turns now to the initial screen.

## II.  GOVERNING LAW

"'District courts are required to screen *all* civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel, as

---

[1] One final note regarding the pleadings:  although both Barker and Morrow are named Plaintiffs in this action, the initial complaint and amended complaint were signed by, and appear to have been authored by, only Plaintiff Barker.  And while some of the claims arguably challenge actions that allegedly could have occurred to both Plaintiffs Barker and Morrow (and other inmates), others challenge actions that allegedly occurred only to Plaintiff Barker.

the statute does not differentiate between civil actions brought by prisoners.'" *Espinoza*

*Vallecillo v. Michigan*, No. 2:19-cv-13354, 2020 WL 85929, at *2 (E.D. Mich. Jan. 7, 2020)

(quoting *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997) (emphasis

added)).

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to

"lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992).

In so doing, however, "Congress recognized that 'a litigant whose filing fees and court costs are

assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from

filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490

U.S. 319, 324 (1989)).  To address this concern, Congress included subsection (e)[2] as part of the

statute, which provides in pertinent part:

> (2)  Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> ***
>
> (B)  the action or appeal—
>
>> (i) is frivolous or malicious;
>>
>> (ii)  fails to state a claim on which relief may be granted; or
>>
>> (iii)  seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31.  Thus, § 1915(e) requires *sua sponte*

dismissal of an action upon the Court's determination that the action is frivolous or malicious, or

upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the

---

[2]  Formerly 28 U.S.C. § 1915(d).

basic federal pleading requirements set forth in Federal Rules of Civil Procedure 8(a).  *See also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints."  *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."  *Flagstar Bank*, 727 F.3d at 504 (citations omitted).  Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'"  *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'"  *Frengler v.*

*Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III.  COMPLAINT AND RELIEF SOUGHT

The operative complaint ("Complaint") focuses on seven discrete incidents or matters, arguably *alludes* to an eighth and ninth, and seeks five forms of relief.  First, Plaintiffs assert that, following a water boil advisory on August 3, 2021, "Corrections staff only allowed for us to have 2 or 3 bottles of water before a more than 12 hour period with no access to drinking water. Many were dehydrated and suffered."  (ECF No. 8 at PAGEID # 57; *see also* ECF No. 1-1 at PAGEID # 11.)  Second, Plaintiffs challenge an alleged "strip naked" policy, alleging that "[i]t is a policy and practice in the Muskingum County Jail twice a week in order to exchange for clean linens, inmates strip naked on camera, in front of female Arimark staff and corrections, and stand in line trying to cover with a blanket."  (ECF No. 8 at PAGEID # 57; *see also* ECF No. 1-1 at PAGEID # 11.)  Plaintiffs decry this policy as "humiliating, dehumanizing, and borderline sexual abuse."  (*Id.*)  Plaintiff Barker alleges that he was sexually abused as a child, that accordingly these forced strips have been traumatic to him, and that his requests for medical treatment for the mental stress and injury suffered as a result have gone unmet.  (ECF No. 1-1 at PAGEID # 11.)

Plaintiffs' third allegation is that "[i]t is a policy at the Muskingum County Jail that they do not and will not carry a law library," which Plaintiffs contend "greatly affects" their rights to due process and a fair trial.  (ECF No. 8 at PAGEID # 57.)  Fourth, Plaintiffs allege without elaboration that the food at the Muskingum County Jail is "inadequate."  (*Id.*)  Fifth, Plaintiffs contend, again without elaboration, that the conditions at the Muskingum County Jail are "deplorable, unsanitary, and unsafe."  (*Id.*)

A sixth claim, alleged by Plaintiff Barker, is that in August 2021, he was placed "in the

hole" for five days on "a contraband ticket." (ECF No. 1-1 at PAGEID # 12.)  He asserts that he requested but never received a hearing on that matter, that he was placed in an 8 x 8 cell with only a mat because there was already an inmate "on the rack" in what was intended to be a one-inmate cell, that he was forced to eat on the floor, and that he requested but never received medical care for which he was nonetheless charged $5.00. (*Id*.)  Lastly, a seventh claim raised by Plaintiff Barker (applicable to other unnamed inmates but without specific mention of Plaintiff Morrow), is that in August of 2021, Corrections Officer Taylor called Barker and other inmates a "homosexual slur," for which Barker filed and appealed a grievance. (*Id*.)

In an eighth claim not explicitly raised, but several times *alluded to*, Plaintiffs allege denial of medical care.  Specifically, Plaintiff Barker alleges that he requested but was denied medical care in connection with the trauma he has suffered as a result of the twice-a-week "strip naked" policy, as well as from the time he spent five days in disciplinary segregation. (ECF No. 1-1 at PAGEID ## 11-12.)  And finally, a ninth claim *suggested* by Plaintiff Barker in the portion of the initial complaint addressing exhaustion states that he was "[a]lso denied a prayer rug without an Iman." (*Id*. at PAGEID # 9.)

Plaintiffs seek in the way of relief:  *first*, a declaration that the actions described violate their rights under the Constitution and laws of the United States; *second*, a preliminary and permanent injunction from being made, in order to obtain clean linens, to strip on camera and in front of females and other inmates; *third* compensatory damages against each defendant, jointly and severally, in the amount of $1,000,000, and punitive damages against each defendant, jointly and severally, in the amount of $1,000,000; *fourth*, a jury trial and all costs; and *fifth*, "Any additional relief this Court deems just, proper, and equitable." (ECF No. 8 at PAGEID # 58; ECF No. 1-1 at PAGEID # 13.)

## IV.  DISCUSSION

**A.**    ***Failure to State a Claim against Defendants***

As noted above, Plaintiffs name the following defendants: (1) Muskingum County Jail;
(2) Muskingum County Sheriff's Office; (3) Muskingum County; (4) Zanesville Municipal
Corporation; and (5) State of Ohio.  Plaintiffs do not identify whether they are suing the
Defendants in their official or individual capacity.  (*See generally* ECF Nos. 1-1, 8.)  But the
named (or proper) Defendants are public entities, rather than individuals, against whom Plaintiffs
fail to allege any *actual* involvement in the claimed wrongdoing.  This requires dismissal at this
stage of all nearly all of Plaintiffs' claims.

To state a claim against a defendant in his or her individual capacity, a plaintiff must
allege personal involvement of the defendant in causing plaintiff's injury.  *Hardin v. Straub*, 954
F.2d 1193, 1196-98 (6th Cir. 1992).  A party cannot be held liable under Section 1983 unless the
party personally participated in, or otherwise authorized, approved or knowingly acquiesced in,
the allegedly unconstitutional conduct.  *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th
Cir. 1989).

Plaintiffs name the Muskingum County Jail as a Defendant.  But a "jail" is not a "person"
or legal entity that can be sued under § 1983.  *See Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir.
June 26, 2002) ("The McCracken County Jail is not a legal entity susceptible to suit.") (citing
*Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)); *see also Marbry v. Corr. Medical
Servs.,* 238 F.3d 422 (Table), 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) ("the Shelby
County Jail is not an entity subject to suit under § 1983.") (citing *Rhodes v. McDaniel*, 945 F.2d
117, 120 (6th Cir. 1991)); *Howell v. Hamilton Cty. Justice Ctr.,* No. 1:15-cv-303, 2015 WL
2406082, at *3 (S.D. Ohio May 20, 2015); *Aladimi v. Hamilton Cty. Justice Ctr.*, No. 1:09-cv-

398, 2012 WL 292587, at *7 (S.D. Ohio Feb. 1, 2012).  These decisions make clear that under these circumstances Muskingum County is the appropriate Defendant and, as more fully explained below, is liable under § 1983 only if the Plaintiff demonstrates a causal connection between a County policy or custom and the alleged unconstitutional action.  *Watson*, 40 F. App'x at 89; *Marbry*, 2000 WL 1720959, at *2; *Howell*, 2015 WL 2406082, at *3; *Aladimi*, 2012 WL 292587, at *7.  The Undersigned accordingly **RECOMMENDS** that Plaintiffs' claims against Muskingum County Jail be **DISMISSED**.  Plaintiffs' claims against Muskingum County are discussed in greater detail below.

Plaintiffs also name the Muskingum County Sheriff's Office as a Defendant in this matter, without alleging any direct involvement in the alleged misconduct.  To state a claim upon which relief can be granted under § 1983 against supervisory personnel, Plaintiffs must allege that a claimed constitutional violation was based on active unconstitutional behavior, *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), and cannot be based upon the mere right to control employees.  *Polk Co. v. Dodson*, 454 U.S. 312, 326 (1981); *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978).  That is, Plaintiffs must show that supervisory personnel were actually involved in the alleged violation of constitutional rights.  *See Hardin*, 954 F.2d at 1196-98; *Leach*, 891 F.2d at 1246; *Greene*, 310 F.3d at 899; *Shehee*, 199 F.3d at 300.  A plaintiff must demonstrate that a supervisory defendant "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on."  *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999).  Thus, to hold a supervisor liable under Section 1983, a plaintiff "'must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . . .'"  *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (quoting *Shehee*, 199 F.3d at 300).  Plaintiffs here have not alleged

actual involvement by the Muskingum County Sheriff's Office in any of the actions challenged in the Complaint. Thus, the Undersigned **RECOMMENDS** that the Muskingum County Sheriff's Office be **DISMISSED** as a Defendant.

The same analysis, namely the failure to make any direct allegations in the Complaint, also warrants dismissal of the Zanesville Municipal Corporation. As in *Watson*, *Marbry*, *Howell*, and *Aladimi* above, the Muskingum County jail is a department of the county, not the municipality, in which it is situated. Beyond noting it was the municipality of Zanesville that declared the "boil advisory" that resulted in reliance on, and alleged rationing of, bottled water, Plaintiffs make no direct allegations against Zanesville in connection with any of the actions Plaintiffs challenge. And Zanesville's declaration of a boil advisory due to a water main break does not strike the Undersigned as an "allegation" of any wrongdoing. Accordingly, the Undersigned **RECOMMENDS** that Zanesville Municipal Corporation be **DISMISSED**.[3]

Finally, Plaintiffs also name the State of Ohio as a Defendant but again fail to make any allegations directed toward it in the complaint. Even if, however, Plaintiffs had made any assertions against the State of Ohio, their claims would be barred by the Eleventh Amendment. The Eleventh Amendment to the United States Constitution precludes a private party from bringing suit against a state or any of the state's agencies unless the state has expressly consented to the suit or Congress has properly abrogated the state's sovereign immunity. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). "Ohio has

---

[3] Plaintiffs also seek against Defendants, jointly and severally, compensatory damages in the amount of $1,000,000 and punitive damages in the amount of $1,000,000. Even if any of the named Defendants were being sued in their individual capacity, section 1983 does not permit Plaintiffs to bring their claims for *money* damages against *individual* Defendants in their *official* capacities. *Turner v. Ohio Department of Rehabilitation and Correction*, No. 2:19-cv-2376, 2019 WL 3842390, at *3 (S.D. Ohio Aug. 15, 2019) (citing *Will*, 491 U.S. at 71; *Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003)).

not waived its sovereign immunity in federal court." *Mixon v. Ohio*, 193 F. 3d 389, 397 (6th Cir.

1999). And "Congress did not intend to override well-established immunities or defenses under

the common law" by enacting § 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 67

(1989). Because Eleventh Amendment immunity applies here, the Undersigned

**RECOMMENDS** that the State of Ohio be **DISMISSED** as a Defendant.

**B.**     ***Conditions of Confinement Claims***

As summarized above, Plaintiffs raise several claims challenging the conditions of their

confinement. To this end, the Eighth Amendment protects all people from "cruel and unusual

punishments." U.S. Const. Am. VIII.

> [W]hen the State takes a person into its custody and holds him there against his
> will, the Constitution imposes upon it a corresponding duty to assume some
> responsibility for his safety and general well being . . . The rationale for this
> principle is simple enough: when the State by the affirmative exercise of its power
> so restrains an individual's liberty that it renders him unable to care for himself, and
> at the same time fails to provide for his basic human needs—*e.g.*, food, clothing,
> shelter, medical care, and reasonable safety—it transgresses the substantive limits
> on state action set by the Eighth Amendment . . . .

*Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (citing *Helling v. McKinney*, 509 U.S. 25,

32 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200

(1989))). "The Constitution 'does not mandate comfortable prisons,' but neither does it permit

inhumane ones, and . . . 'the treatment a prisoner receives in prison and the conditions under

which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*,

511 U.S. 825, 832 (1994) (first quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), then

quoting *Helling*, 509 U.S. at 31). "A prison official's 'deliberate indifference' to a substantial

risk of serious harm to an inmate violates the Eighth Amendment." *Id*. at 828 (citations omitted).

The Eighth Amendment's deliberate indifference framework includes both an objective

and subjective prong. *Id.* at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an

inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. The subjective component, on the other hand, requires inmates to show that prison officials knew of and disregarded an excessive risk, thereby acting with deliberate indifference. *Smith v. DeWine*, 476 F. Supp. 3d 635, 661 (S.D. Ohio 2020) (citing *Farmer*, 511 U.S. at 834, 837-38). Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

Here, Plaintiffs allege an unconstitutional deprivation of access to water during a period of more than twelve hours. The Eighth Amendment requires prison officials "to provide humane conditions of confinement" and to "ensure that inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer*, 511 U.S. at 832. However, "extreme deprivations are required to make out a conditions-of-confinement claim . . . [b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *See Richmond v. Settles*, 450 F. App'x 448, 454-56 (6th Cir. 2011) (quoting *Rhodes*, 452 U.S. at 348).

Conditions-of-confinement claims involving alleged deprivations of basic needs are fact-specific. "In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration.'" *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)

(citation omitted). Thus, fleeting and temporary discomforts are usually insufficient to rise to the level of a constitutional injury. *See, e.g., Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (discussing temporary inconveniences). For example, in *Davis v. Strickland*, No. 2:09-cv-015, 2009 WL 2047891, at *13 (S.D. Ohio July 7, 2009), the Court found no Eighth Amendment violation from a single period of short duration (approximately thirty-six hours) following a water main break during which inmates were unable to flush toilets but were provided limited rations of water. The Court noted that no long-term adverse effects were alleged, and that there was no evidence that the defendants had purposely created a water shortage or acted with deliberate indifference to the inmates' needs during this period. *See also Richmond*, 450 F. App'x at 455-56 (finding no Eighth Amendment violation from the denial of seven meals over six days); *Leonard v. Smoot*, No. 1:13-cv-097, 2013 WL 1755750, at *3 (S.D. Ohio Mar. 28, 2013) (finding no Eighth Amendment violation from the denial of some meals over a short period of time absent any showing that the meal plan was inadequate or that plaintiff suffered harm).

Accepting Plaintiffs' allegations as true and even resolving ambiguous inferences in their favor, the Undersigned finds that these allegations fail to state a claim upon which relief may be granted. Plaintiffs were provided a limited amount of bottled water, but do not appear to have been wholly deprived of water, during a short duration of time. Given the situational emergency posed by the declaration of a "boil advisory," there does not appear to have been on the part of corrections officers an intent to deprive Plaintiffs of water or a deliberate indifference to Plaintiffs' needs during this period. And Plaintiffs do not plausibly allege that they personally suffered any serious harm.[4] Under these circumstances, Plaintiffs can satisfy neither the

---

[4] To the extent that Plaintiffs allege that as the result of the lack of or limited access to water,

objective nor subjective components of a conditions-of-confinement claim as to their "allotment of water during boil advisory" claim.

Regarding Plaintiffs' claims challenging the food as inadequate and the conditions as deplorable, it is well-settled that prisoners have a right to adequate food. *See Farmer*, 511 U.S. at 832. However, the Sixth Circuit has held that, while a prisoner is constitutionally entitled to food that is nutritionally adequate for the maintenance of normal health, complaints about "the preparation or quality of prison food" are generally "far removed from Eighth Amendment concerns." *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977). The Eighth Amendment is implicated only when the food provided to a prisoner is insufficient to maintain normal health. *See Sims v. Michigan Dept. of Corr.*, 23 F. App'x 214, 216 (6th Cir. 2001) (citing *Rhodes*, 452 U.S. at 347). As for the allegation that the conditions are "deplorable, unsanitary, and unsafe," the Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement, and to "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)); *Edge v. Mahlman*, No. 1:20-cv-892, 2021 WL 3725988, at *3-4 (S.D. Ohio Aug. 23, 2001).

Beyond characterizing the food as "inadequate," and the conditions as "deplorable, unsanitary, and unsafe," Plaintiffs fail to offer any factual allegations that would enable the Undersigned to determine whether Plaintiffs can demonstrate that the food is insufficient to

---

"many were dehydrated and suffered," (ECF No. 8 at PAGEID # 57), Plaintiffs are not entitled to assert the rights of anyone but themselves. "'[A] prisoner who initiates a civil action challenging certain conditions at a prison facility in his individual capacity is limited to asserting alleged violations of his own constitutional rights and, absent a request for class certification, lacks standing to assert the constitutional right of other prisoners.'" *Heid v. Mohr*, No. 2:18-cv-00311, 2020 WL 2764029, at *2 (S.D. Ohio May 28, 2020) (quoting *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989)); *see also Garrison v. Michigan Dept. of Corrections*, 333 F. App'x 914, 919 (6th Cir. 2009) ("a pro se litigant may represent himself on his own claims, but [he] may not act in a representative capacity").

maintain normal health, that the conditions impose extreme deprivations, or that prison officials demonstrated a deliberate indifference to either or both. Plaintiffs thus fail to offer any factual allegations from which the Undersigned could determine whether Plaintiffs can satisfy either the objective or the subjective component of a conditions-of-confinement claim. Although Plaintiffs are not required at this stage to offer "detailed factual allegations," *Iqbal*, 556 U.S. at 678, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570)). Even as to the less stringent standards to which *pro se* litigants' pleadings should be held, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Accordingly, the Plaintiffs' "inadequate food" and "deplorable conditions" claims fail.

Regarding Plaintiff Barker's allegations stemming from his confinement to five days of disciplinary exclusion "in the hole," "[t]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "An inmate establishes a liberty interest when a change in conditions of confinement 'imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'" *Williams v. Lindamood*, 526 F. App'x 559, 562 (6th Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). An increase in security classification generally does not constitute an 'atypical and significant' hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification. *See, e.g., Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003).

15

Likewise, confinement in segregation generally does not constitute an "atypical and significant" hardship except in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to an *indefinite* administrative segregation" or that such confinement was excessively long in duration. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harbin-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008); *see also Sandin*, 515 U.S. at 486 ("We hold that [the inmate's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."); *Harris*, 79 F. App'x at 758-59 (holding that neither "punishment of more than 60 days of punitive segregation" nor a change in security classification "give rise to a protected Fourteenth Amendment Liberty interest"); *Carter*, 69 F. App'x at 680 (holding that inmate's placement in disciplinary confinement or a change in security classification or housing assignment did not implicate the Due Process Clause).

Regarding Plaintiff Barker's allegation that he requested but did not receive a hearing on the contraband ticket that led to his disciplinary exclusion, as discussed more fully below, there is no cause of action for the improper adjudication of, or failure to respond to, an inmate's grievances because inmates do not have a constitutional right to a grievance procedure.  Plaintiff Barker also asserts that he was placed in an 8 x 8 single-inmate cell, and forced to sleep on and eat from a mat on the floor.  Under the governing conditions-of-confinement standards discussed more fully, Plaintiff's allegations do not establish an Eighth Amendment violation, given the relatively limited scope of the discomfort to which he was subjected in relation to the short duration of his time in disciplinary exclusion.  *See, e.g., Grissom v. Davis*, 55 F. App'x 756, 757 (6th Cir. 2003) (deprivation of a mattress, blankets or other bedding for six days did not violate the Eighth Amendment).  Here, Plaintiff Barker has not alleged that he was placed in segregation

16

indefinitely or for an excessively long period of time; it was five days. The conditions were not unduly harsh, and again, Plaintiff Barker was in segregation for just five days. That Plaintiff Barker requested but did not receive a hearing does not state a constitutional claim.

As discussed more fully above, a prison official's deliberate indifference to a serious medical condition or substantial risk of serious harm to an inmate violates the Eighth Amendment, *Farmer*, 511 U.S. at 828, and this deliberate indifference framework includes both an objective and subjective prong, *id.* at 834; *Helling*, 509 U.S. at 35-37. "Generally, the denial of a prisoner's request for medical care alone will not give rise to a cause of action under 42 U.S.C. § 1983. Rather, the withholding of medical services must be accompanied by circumstances which demonstrate a deliberate indifference to the prisoner's suffering on the part of those charged with his care and custody." *Blair v. Cuyahoga County Sheriff*, 810 F.2d 199 (Table), 1986 WL 18393, at *1 (6th Cir. Nov. 14, 1986) (citing *Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976)).

Plaintiff Barker has failed to allege any facts from which the Undersigned can determine whether he has satisfied either the objective or subjective components of a conditions-of-confinement claim. Beyond alleged trauma that he has experienced from the "strip naked" policy, Plaintiff fails to identify a serious medical need to which jail officials were deliberately indifferent. The Undersigned accordingly **RECOMMENDS** that all of Plaintiffs' conditions of confinement claims be **DISMISSED**.

## C.    *Other Claims Not Related to Conditions of Confinement*

The Complaint alleges that the Muskingum County Jail does not and will not carry a law library, and that this greatly affects inmates' rights to due process and a fair trial. (ECF No. 8 at PAGEID # 57.) Although prisoners may not be denied access to the courts, to state a claim upon

17

which relief may be granted under § 1983 stemming from the lack or inadequacy of a law library or legal materials, a plaintiff must demonstrate actual prejudice in an existing or contemplated proceeding. *See Lewis v. Casey*, 518 U.S. 343, 351-53 (1996); *Hadix v. Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Moreover, the plaintiff must also show that the underlying action or claim allegedly prejudiced is not frivolous. *Lewis*, 518 U.S. at 353-54; *Hadix*, 182 F.3d at 406. *See also Krouskoupf v. Muskingum Cty. Jail*, No. 2:19-cv-3045, 2019 WL 4345691, at *4-5 (S.D. Ohio Sep. 12, 2019). Plaintiffs here fail to allege any facts showing they were actually impeded in any existing or contemplated action or claim, or that they were harmed in some other specific way by the jail's failure to maintain a law library. They were able to file the existing action. Plaintiffs' conclusory allegations are insufficient to state a claim for denial of access to the courts under § 1983. *See Marcum v. Jones*, No. 1: 06-cv-108, 2006 WL 543714, at *2 (S.D. Ohio Mar. 3, 2006) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*. 859 F.2d 434, 437 (6th Cir. 1988)). Therefore, the Undersigned **RECOMMENDS** that this "lack of a law library" allegation be **DISMISSED**.

The Complaint also alleges that on an unspecified date in August, 2021, Correction Officer Taylor (dismissed as a named Defendant in this matter) called Plaintiff Barker and other inmates "a homosexual slur." (ECF No. 1-1 at PAGEID # 12.) Harsh verbal treatment does not rise to the level of a deprivation of rights secured by the Constitution or laws of the federal government sufficient to state a claim upon which § 1983 relief may be granted. *See Wingo v. Tennessee Dept. of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief.") (citing *Ivey*, 832 F.2d at 955); *see also Byers v. Ohio Dep't of Rehab. and Corr.*, No. 1:19-cv-661, 2019 WL 4267344, at *2 (S.D. Ohio Sep. 10, 2019)

18

(collecting cases); *Howell*, 2015 WL 2406082, at *4 (collecting cases); *Pippin v. Hamilton Cty.*

*Sheriff*, No. 1:14-cv-689, 2014 WL 12832229, at *3 (S.D. Ohio Oct. 1, 2014) (collecting cases).

The Undersigned **RECOMMENDS** that this claim be **DISMISSED**.

Plaintiffs also allude to complaints with Defendants' grievance procedures. Specifically,

Plaintiffs state that multiple grievances were filed and appealed but never responded to (ECF No.

1-1 at PAGEID ## 9, 11); that Plaintiff Barker sent grievance forms home "for safekeeping" and

to be submitted as evidence at a later date (*id.* at PAGEID # 11, 12); and that some inmates were

not afforded grievances and/or grievances were not returned (ECF No. 8 at PAGEID # 55). To

the extent that Plaintiffs allege a constitutional violation stemming from the Defendants'

grievances procedures, there is no cause of action for the improper adjudication of, or failure to

adjudicate, an inmate's grievances. *See Daniels v. Lisath*, No. 2:10-cv-968, 2010 WL 5071776,

at *1 (S.D. Ohio Dec. 7, 2010) ("To the extent Plaintiff is claiming that the grievance procedure

failed to produce the outcome he desired, this cannot give rise to a § 1983 claim because

'[p]rison inmates do not have a constitutionally protected right to a grievance procedure.'"

(quoting *Miller v. Haines*, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998) (citing

*Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119 (1977) (Burger, C.J.,

concurring)).); *Turner*, 2019 WL 3842390, at *3 (collecting cases); *see also Hoffmeyer v.*

*Chambers-Smith*, No. 1:20-cv-637, 2020 WL 7698131, at *4 (S.D. Ohio Dec. 28, 2020)

("plaintiff's allegations that defendants mishandled his grievances are subject to dismissal

because plaintiff has no right under the Constitution to an effective prison grievance procedure.")

(citations omitted); *Wood v. Plummer*, No. 3:11-cv-032, 2011 WL 2971874, at *4 (S.D. Ohio

June 27, 2011) ("'Prison officials are not liable under § 1983 for denying or failing to act on

grievances.'" (quoting *Barnett v. Luttrell*, No. 08-6432, 2011 WL 831528, at *2 (6th Cir Mar.

10, 2011)).  Because Plaintiffs have no constitutional right to an effective prison grievance system, the Undersigned **RECOMMENDS** that these claims be **DISMISSED**.

Plaintiffs further allege that they were "[a]lso denied a prayer rug without an Iman." (ECF No. 1-1 at PAGEID # 9.)  The Religious Land Use and Institutionalized Persons Act ("RLUIPA") provides that "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized person unless the government demonstrates that the burden "is in furtherance of a compelling government interest" and "is the least restrictive means of furthering" that interest.  42 U.S.C. § 2000cc-1(a).  Even applying a liberal reading to the complaint, the Undersigned notes that Plaintiffs directly accuse no named Defendants of religious discrimination and provide no elaboration beyond that single statement in the exhaustion section of the initial complaint.  The Undersigned accordingly **RECOMMENDS** that Plaintiffs' "prayer rug" allegation be **DISMISSED**.

Finally, and most significantly, Plaintiffs allege that inmates in the Muskingum County Jail must twice a week "strip naked," with only a blanket to cover themselves, in front of other inmates and staff, including females, in order to obtain fresh linens.  (ECF No. 1-1 at PAGEID # 11; ECF No. 8 at PAGEID # 57.)  Plaintiffs allege that this is dehumanizing, humiliating, traumatic, and bordering on sexual abuse.  Under the Fourth Amendment, "a convicted prisoner maintains some reasonable expectations of privacy while in prison, particularly where those claims are related to forced exposure to strangers of the opposite sex, even though those privacy rights may be less than those enjoyed by non-prisoners."  *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992) (citing *Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Kent v. Johnson*, 821 F.2d 1220, 1226-27 (6th Cir. 1987)); *see also Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 572 n.2 (6th Cir. 2013).  Generally, "[p]rison administrators . . . should be accorded wide-ranging

deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547. However, in a civil rights action by pretrial detainees challenging a jail policy of subjecting detainees to group strip searches in order to delouse them, the Sixth Circuit reminded: "where a particular search or seizure involves significant intrusion into a detainee's privacy interests, the existence of 'obvious, easy alternatives . . . that fully accommodate[] the prisoner's rights at *diminimus* cost to valid penological interests' suggests that the institution's need to proceed in its chosen manner does not outweigh the burdens it imposes upon the detainee and is therefore unreasonable." *Williams v. City of Cleveland*, 771 F.3d 945, 950 (6th Cir. 2014) (quoting *Turner v. Safley*, 482 U.S. 78, 90-91 (1987); *see also Salem v. Mich. Dep't. of Corr.*, 643 F. App'x 526, 530 (6th Cir. 2016) (holding that a strip-search policy for inmates returning from off-site trips, conducted in the view of other inmates, without a legitimate penological justification violates the inmates' Fourth Amendment rights).

The Undersigned finds such allegations sufficient to survive the subject initial screen. Although the practice could be nothing more than attendant to the orderly collection of worn clothing and provision of clean linens within the privacy limitations imposed by a prison setting, the record is insufficient to conclude as much at this stage of the proceedings. The Undersigned cannot say that Plaintiffs have failed to allege any facts that rise to the level of an actionable claim under the Fourth Amendment. *Iqbal*, 556 U.S. at 678. *Cf. Green*, 224 F. Supp. 3d at 164 ("accusations of humiliation and embarrassment caused by strip searches, on their own, do not state a claim under the Fourth Amendment"). Because the Undersigned cannot find that Plaintiffs' "strip naked" allegations are frivolous, malicious, or fail to state a claim upon which relief may be granted, the Undersigned **RECOMMENDS** that this claim be permitted to proceed

21

beyond the initial screen against Defendant Muskingum County, although the Undersigned expresses no opinion as to the merits of Plaintiffs' claim.

## V.  MOTION FOR APPOINTMENT OF COUNSEL

Also before the Court for consideration are the Motion for Appointment of Counsel (ECF No. 2), the Motion for Appointment of Counsel (ECF No. 3), and an untitled Motion by Plaintiff Barker seeking the appointment of counsel (ECF No. 6).  These motions are **DENIED WITHOUT PREJUDICE TO RENEWAL**.  Although this Court has authority under 28 U.S.C. § 1915(e) to appoint counsel in a civil case, appointment of counsel is not a constitutional right.  *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (citation omitted).  Rather, "[i]t is a privilege that is justified only by exceptional circumstances."  *Id*. at 606.  The Court has evaluated whether such exceptional circumstances exist in this case and determines that the appointment of counsel is not warranted at this juncture.

## VI.  CONCLUSION

For the reasons explained above, it is **RECOMMENDED** that Plaintiffs be **PERMITTED** to pursue their claims arising from Defendant Muskingum County's alleged "strip naked" policy, but that the remainder of Plaintiffs' claims be **DISMISSED**.

It is further **ORDERED** that the motions for appointment of counsel (ECF Nos. 2, 3, and 6) are **DENIED WITHOUT PREJUDICE TO RENEWAL**.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g., Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to the magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal….") (citation omitted).

**IT IS SO ORDERED.**

Date: March 21, 2022                              ____/s/ *Elizabeth A. Preston Deavers*____
                                                  ELIZABETH A. PRESTON DEAVERS
                                                  UNITED STATES MAGISTRATE JUDGE